IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01279–EWN

GUERRERO MENDEZ,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a social-security benefits appeal under 42 U.S.C. § 405(g) (2004).  Plaintiff Guerrero Mendez challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Disability Insurance Benefits and Supplemental Security Income benefits.  Jurisdiction is based on 42 U.S.C. § 405(g).

### FACTS

***1.   Medical Evidence***

Plaintiff was born on March 4, 1955, and was forty-six years old at the onset of his alleged disability.  (Admin. R. at 66 [filed Sept. 17, 2004] [hereinafter "Admin. R."].)  Plaintiff completed the fourth grade in Mexico and has not completed any other formal education.  (*Id.* at 250.)  Plaintiff is not fluent in spoken English and cannot read or write English.  (Pl.'s Opening

Br. at 1 [filed Nov. 8, 2004] [hereinafter "Pl.'s Br."].)  Plaintiff worked in the vocationally relevant past as a butcher in a beef packing plant.  (*Id.*)  Plaintiff alleges an inability to work beginning June 21, 2000, due to back problems.  (*Id.* at 80.)

On January 5, 2000, Eric Jamrich, M.D., examined Plaintiff for complaints of numbness and weakness in Plaintiff's left leg and intermittent severe back pain.  (*Id.* at 200.)  Dr. Jamrich noted that Plaintiff had back surgery in 1997.  (*Id.*)  Plaintiff's Computed Tomography ("CT") Scan revealed "significant degenerative and postoperative changes at the L4–5 and L5–S1 disc with some root pressure suspected at L5–S1."  (*Id.* at 198.)

On June 29, 2000, Dr. Jamrich performed an anterior and posterior fusion of L4 and S1 on Plaintiff.  (*Id.* at 146.)  On September 19, 2000, Dr. Jamrich evaluated Plaintiff in a follow-up and noted Plaintiff was "doing well."  (*Id.* at 191.)

On February 12, 2001, Pamela A. Knight, M.D., examined Plaintiff.  (*Id.* at 180.)  Dr. Knight noted that Plaintiff was doing "very well and is not complaining of any radicular pain symptoms."  (*Id.*)  On examination, Plaintiff had negative straight leg raise.  (*Id.*)  Dr. Knight noted that Plaintiff "ambulates with a nonantalgic gait and has no trouble walking on his toes or heels . . ."  (*Id.*)  Dr. Knight released Plaintiff back to work at Excel Beef Corporation ("Excel") because she opined that Plaintiff "should be able to perform the warehouse helper position, as long as he has lifting, pushing, and pulling restrictions of [twenty pound] maximum."  (*Id.*)

On February 20, 2001, Dr. Jamrich evaluated Plaintiff and agreed with the limitations Dr. Knight placed on Plaintiff.  (*Id.* at 189.)  Dr. Jamrich reiterated that he "strongly feel[s] that [Plaintiff] should not be doing any work which requires him to lift more than [twenty] pounds or

requires any bending or twisting." (*Id.*) Dr. Jamrich opined that Plaintiff could not do work that requires bending in any form. (*Id.*)

On May 15, 2001, Dr. Jamrich evaluated Plaintiff in a follow-up. (*Id.* at 188.) Dr. Jamrich noted that "[o]verall [Plaintiff is] doing well." (*Id.*) On examination, Plaintiff had minimal back pain, but he had some sysethesias and paresthesias going from the lateral aspect of his leg to the dorsum of his foot. (*Id.*) Dr. Jamrich recommended that Plaintiff continue on light duty. (*Id.*)

On July 13, 2001, Kathy Casey, P.T., performed a functional capacity evaluation on Plaintiff. (*Id.* at 160–70.) Plaintiff was able to lift five pounds from floor to waist, (*id.* at 164), he could lift five pounds from waist to shoulder, (*id.* at 165), and five pounds from shoulder to overhead. (*Id.*) Casey stopped the lifting trials because Plaintiff complained of increased pain an discomfort in the left low back, middle back, and upper back between his shoulder blades. (*Id.*) Following the completion of the test, Plaintiff stated, "It feels like my nerve is crushed." (*Id.*) Plaintiff was able to carry twenty-five pounds for fifty feet prior to terminating the test. (*Id.* at 165–66.) Plaintiff was able to push a fifty-eight pound sled loaded with fifteen pounds with an approximate pushing force exertion of 22.5 pounds. (*Id.* at 166.) Casey stopped both the pushing and pulling trials because Plaintiff "complained of increased pain and discomfort in left low back and middle back." (*Id.*) Casey determined that Plaintiff's maximum sustained sitting was to be fifteen minutes and maximum sustained standing was to be twenty minutes. (*Id.* at 167.)

On August 29, 2001, Dr. Knight completed a report entitled "Maximum Medical Improvement and Impairment." (*Id.* at 173.) Dr. Knight noted that Plaintiff reached maximum

-3-

medical improvement ("MMI") on June 25, 2001. (*Id.*) Dr. Knight opined that Plaintiff could return to modified work on July 30, 2001, with the following permanent restrictions: (1) lifting up to twenty pounds occasionally and ten pounds frequently; (2) sitting fifteen minutes at a time with a one-minute break; and (3) walking or standing twenty minutes at a time with a two-minute break. (*Id.*)

On April 16, 2002, Darrell Fenton, D.O., evaluated Plaintiff for complaints of numbness on the left side of Plaintiff's body. (*Id.* at 184.) Plaintiff complained of neck numbness on the right lateral thigh. (*Id.*) Dr. Fenton noted that Plaintiff had neck discomfort and Plaintiff could not sleep through the night due to pain. (*Id.*) Dr. Fenton ordered a "left EMG nerve conduction study of the lower extremity" in an effort to determine the source of Plaintiff's pain. (*Id.*) On follow-up, Dr. Fenton noted that the study showed a "moderate carpal tunnel syndrome on the left upper extremity; peripheral neuropathy left lower extremity; no evidence of any residual radiculopathy." (*Id.* at 183.)

On June 18, 2002, Dr. Jamrich evaluated Plaintiff in a follow-up visit. (*Id.* at 186.) Dr. Jamrich noted that Plaintiff was able to do light work, however, "when he was sent back to the line he was concerned . . . that he would need to be taking breaks every [fifteen] minutes." (*Id.*) On examination, Plaintiff had weakness on dorsiflexion and some mild weakness in plantar flexion on the left side. (*Id.*)

On August 7, 2002, Dr. Jamrich evaluated Plaintiff following a CT myelogram. (*Id.* at 218.) Dr. Jamrich noted that "[t]he CT myelogram really shows no neurocompressive lesion at any level." (*Id.*) Dr. Jamrich opined that the report noted some enlargement of the S1 nerve root on the right. (*Id.*) He did not think this finding was significant or "indicative of any issues

[Plaintiff] might have." (*Id.*) Dr. Jamrich suggested that Plaintiff consider pain management if his pain was severe enough but that "otherwise no surgical intervention would be appropriate." (*Id.*)

### 2. *Procedural History*

Plaintiff applied for disability insurance benefits on October 5, 2001. (*Id.* at 19.) The Social Security Administration denied his application on March 7, 2002. (*Id.* at 32.) The Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim on June 3, 2003, at which Plaintiff and a vocational expert testified. (*Id.* at 19, 243–73.)

Plaintiff testified that he came to the United States twenty-two years ago. (*Id.* at 250.) Plaintiff testified that he has not worked since August 2001, when he was laid off from Excel. (*Id.* at 251.) Plaintiff worked for Excel for eighteen or nineteen years as an assistant to the supervisor. (*Id.*) Plaintiff testified that he worked with the animal hides and the innards of the beef or carcasses. (*Id.* at 252.) His job was to get rid of the items that were not suitable for packaging. (*Id.*) Plaintiff testified that he regularly lifted over one-hundred pounds daily. (*Id.* at 253.)

Plaintiff testified that his doctors placed rods in his spine during surgery and he has a hard time sitting down. (*Id.* at 254.) He has to get up every ten to fifteen minutes because the rods are more painful when he is sitting. (*Id.*) Plaintiff testified that he can only stand for twenty to thirty minutes at a time and he can only walk a mile before his back hurts. (*Id.*) Plaintiff testified that he takes Tylenol for his back pain. (*Id.* at 256.) He claims he does not take drugs or prescription drugs because he does not want to become addicted. (*Id.*)

Plaintiff testified that he returned to work in January or February 2001 sorting and

folding plastic gloves.  (*Id.* at 258–59.)  Excel laid-off Plaintiff in August 2001.  (*Id.*)  Plaintiff testified that he would have continued in that job if they had not laid him off.  (*Id.* at 259.)

Anthony Manuele, a vocational expert, testified at the hearing.  (*Id.* at 263–73.)  The ALJ asked Manuele to consider several hypotheticals.  The first hypothetical was based on Plaintiff's past work as a glove sorter.  (*Id.* at 266–67.)  Manuele testified that an individual, similarly situated to Plaintiff, could perform light assembly work that would allow a "sit/stand option."  (*Id.* at 267.)  The other hypotheticals required Manuele to assume that Plaintiff never worked in the past as a glove sorter.  Essentially, the ALJ asked Manuele to assume "there was no past work that the person could perform."  (*Id.*)  Manuele opined that Plaintiff could perform light assembly type of work.  (*Id.*)

The ALJ issued a decision after a hearing on June 3, 2003.  (*Id.* at 19.)  The ALJ determined Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform his past relevant work as a glove sorter and packer.  (*Id.* at 27.)  The ALJ added that such work exists in significant numbers in the national economy.  (*Id.*)

In reaching his conclusion, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since August 3, 2001.  (*Id.* at 21.)  Next, the ALJ determined that Plaintiff "sustained injuries to his lumbar spine and is status post hemilaminectomy and discectomy at L4–5 and L5–S1 and anterior-posterior lumbar fusion at L4–S1, impairments which cause more than a minimal effect on [Plaintiff's] physical or mental ability to perform basic work-related activites."  (*Id.*)  While these impairment are "severe", the ALJ determined that Plaintiff does not have an impairment which meets the criteria of any of the listed impairments.  (*Id.* at 59.)  Next,

the ALJ determined Plaintiff's RFC. In determining Plaintiff's RFC, the ALJ found that Plaintiff was not credible because:

> [t]he record shows that [Plaintiff] is unable to resume his past relevant work as a lead butcher, but has been completely successful in working as a glove sorter and packer. [Plaintiff] testified that if that job had been offered to him as a permanent position, he would be able to perform those duties. However, when [Plaintiff] was placed at MMI and unable to resume his duties as lead butcher, he was laid off.

(*Id.* at 25.) Based on the evidence presented to him, the ALJ issued his RFC determination. The ALJ concluded that:

> [Plaintiff] has the [RFC] to occasionally lift [twenty] pounds, frequently [ten] pounds, stand/walk for [twenty] minutes at a time for a total of [four] hours in an eight hour workday, with regular breaks. Additionally, [Plaintiff] would need to change positions for [one] minute after [fifteen] minutes of sitting and for [two] minutes after [twenty] minutes of walking or standing. [Plaintiff] could occasionally climb ramps, stairs or stepladders, stoop, kneel, crouch, crawl and twist, but should never climb ropes or scaffolds or work around heights. In addition, [Plaintiff] could frequently balance.

(*Id.* at 26.) In accord with this RFC, the ALJ determined that Plaintiff could perform his past relevant work as a glove sorter. (*Id.*) The ALJ determined that there are a significant number of jobs in the regional and national economy which Plaintiff could perform, and therefore the ALJ found that Plaintiff was not disabled. (*Id.* at 27.) Plaintiff appealed this decision, and on April 19, 2004, the appeals council declined to review the ALJ's determination. (*Id.* at 6–8.) Thus, the ALJ's decision became the Commissioner's final decision for the purposes of the present appeal. Plaintiff filed a complaint in this court on June 21, 2004, challenging the Commissioner's denial of disability insurance benefits. (Compl. [filed June 21, 2004] [hereinafter "Compl."].)

## ANALYSIS

*1.    Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits. *See* 42 U.S.C. § 1383(c)(3) (2004) (incorporating review provisions of 42 U.S.C. § 405[g]). Section 405(g) provides, in relevant part, that:

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C.A. § 405(g). Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision. *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987). This court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987). That does not mean, however, that my review is merely cursory. To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is

also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

## *2.   Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In proving his disability, a plaintiff must make a *prima facie* showing that he is unable to return to prior work he has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey*, 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis); 20 C.F.R. § 404.1520 (2004). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that he is not currently involved in any

substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams*, 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. *Id.*; 20 C.F.R. § 404.1520(e). This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). The fifth step requires the Commissioner to demonstrate that the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and there is availability of that type of work in the national economy. *See Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

### *3.  Disability Determination*

Plaintiff alleges that the ALJ committed three errors. First, Plaintiff asserts that the ALJ's RFC determination at step four, regarding Plaintiff's ability to return to his past relevant work, is incorrect because the ALJ did not make a determination that Plaintiff's work as a glove

sorter was substantial gainful activity. (Pl.'s Br. at 2–6.)  Second, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence in the record and omits Plaintiff's limitations related to hand-intensive activities, reaching, stooping, and bending. (*Id.* at 6–9.) Finally, Plaintiff argues that "the statistics related to an imprecisely defined group of occupations cannot be said to be substantial evidence of numbers of jobs that [Plaintiff] might be able to perform." (*Id.* at 12.)  I only need to address Plaintiff's first argument.

Plaintiff argues that the ALJ's RFC determination at step four, regarding Plaintiff's ability to return to his past relevant work, is incorrect because the ALJ did not make a determination that Plaintiff's work as a glove sorter was substantial gainful activity. (Pl.'s Br. at 3.)  Past work is not relevant unless it is considered substantial gainful activity. *Melville v. Apfel*, 198 F.3d 45, 53–54 (2d. Cir. 1999).

> [S]tep four of the sequential process requires an inquiry into [Plaintiff's] ability to do [his] past relevant work; [Plaintiff's] past work experience, especially part-time work, is not relevant unless, *inter alia,* it was substantial gainful activity . . .

*Id.*  The ALJ acknowledged that work is not considered substantial gainful activity when it is performed under special conditions, however, the ALJ declined to make a determination regarding whether Plaintiff's past work as a glove sorter could be considered substantial gainful activity. (Admin. R. at 21.)  Rather, the ALJ noted that "considering the purpose of the job of unpacking and sorting gloves, as explained by [Plaintiff], . . . hours spent doing the job, special accommodations that might have been made for [Plaintiff], etc. the undersigned will continue with the sequential evaluation." (*Id.*)  Thus, the ALJ's decision that Plaintiff has the RFC to perform his past relevant work as a glove sorter is erroneous.

Indeed, Defendant confesses this argument. (Def.'s Resp. Br. at 9 [filed Dec. 22, 2004] [hereinafter "Def.'s Resp."].) Specifically, "Defendant acknowledges the ALJ's finding that Plaintiff could return to his past relevant work is not legally defensible because the ALJ did not conclude Plaintiff's job as a [glove sorter] was substantial gainful activity." (*Id.*) Accordingly, the ALJ's determination at step four that Plaintiff was capable of performing his past relevant work was improper because the ALJ did not make a determination regarding whether Plaintiff's work as a glove sorter was substantial gainful activity.

Moreover, Plaintiff's job as a glove sorter may be considered "work performed under special conditions" and therefore it would not be considered substantial gainful activity. Specifically,

> (c) If your work is done under special conditions. The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which[:]
>     (1) You required and received special assistance from other employees in performing your work;
>     (2) You were allowed to work irregular hours or take frequent rest periods;
>     (3) You were provided with special equipment or were assigned work especially suited to your impairment;
>     (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>     (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>     (6) You were given the opportunity to work despite your impairment

>    because of family relationship, past association with your employer, or your
>    employer's concern for your welfare.

20 C.F.R. § 404.1573(c).  Here, Plaintiff's job as a glove sorter was sheltered.  Prior to Plaintiff taking over the job, two people with broken legs filled the position.  (Admin. R. at 260.)  The job was designed and set aside for injured workers whose workers' compensations claims were ongoing.  (*Id.* at 235.)  Plaintiff received assistance from other employees in this position.  Plaintiff testified that another employee brought the box of plastic gloves weighing six pounds to Plaintiff as needed.  (*Id.* at 259.)  There is not enough evidence before the court, however, to determine whether Plaintiff's interim job as a glove sorter fell in the category of "work performed under special conditions."  The ALJ did not discharge his duty at this stage to fully develop the record.  "'The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'"  *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (quoting *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 [10th Cir. 1993]).

   Defendant argues that despite the ALJ's blunder at step four, "the ALJ made a proper alternative finding at step five."  (Def.'s Resp. at 9–10.)  Defendant's argument is incorrect.  First, the ALJ's inquiry never should have proceeded to the fifth step because the ALJ determined that Plaintiff had the RFC to perform his past relevant work as a glove sorter.  (Admin. R. at 26.)  Thus, the ALJ determined Plaintiff was not disabled at step four.  Second, the ALJ's decision that Plaintiff can perform jobs that exist in significant numbers is not supported by substantial evidence.  The ALJ based his determination regarding the number of jobs Plaintiff could potentially perform on Manuele's answers to the ALJ's hypotheticals.  (*Id.* at 26–27.)

Manuele's testimony was vague and potentially inapplicable to Plaintiff's conditions. Specifically, Manuele testified that the production assembler and nuts and bolts assembler are:

> two of 150 other different unskilled, light jobs in the Dictionary of Occupational Titles, which, in Colorado, we have 7,300, nationally there is over 600,000. I'm going to erode [forty] percent of those number due to the sit/stand option of about [thirty] minutes and he was able to certainly continue on working as you had stated.

(*Id.* at 268.) Manuele's testimony refers to an unspecified group of unskilled light jobs, some of which may be inappropriate for Plaintiff, taking into account Plaintiff's physical condition and education. (*Id.*) Thus, even assuming the ALJ correctly arrived at stage five of the sequential evaluation, his determination at step five is not based on substantial evidence in the record.

### *4. Conclusions*

Based on the foregoing it is therefore

ORDERED that the Commissioner's decision is REVERSED and REMANDED.

Dated this  2nd  day of September, 2005

                                                  BY THE COURT:

                                                  s/Edward W. Nottingham
                                                  EDWARD W. NOTTINGHAM
                                                  United States District Judge